IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Cassandra Little,

        Plaintiff,

        vs.                               Case No. 12-2205-JTM

Portfolio Recovery Associates, LLC,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Cassandra Little has sued Portfolio Recovery Associates (PRA) under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., alleging that they illegally harassed her while attempting to collect on a debt. The court previously granted PRA's motion to dismiss Little's FDCPA claims, finding Little's allegations similar to those which were dismissed in *Webb v. Convergent Outsourcing, Inc.*, 11–2606–JTM, 2012 WL 162394 (D.Kan. Jan. 19, 2012). This decision was affirmed in part and reversed in part on appeal, with the court agreeing that Little's claim under 15 U.S.C. § 1692e(5) was properly dismissed, but remanding for further consideration of her § 1692d(5) claim, to the extent that her specific allegations differ from those in *Webb*, and address her § 1692e(2) claim

advanced in paragraph 35 of her proposed amended complaint. *Little v. Portfolio Recovery Assoc.*, ___ Fed.Appx. ___, 2013 WL 6153579 (10th Cir. 2013).

Subsequent to the appeal, Little has conceded that her Amended Complaint does not set forth a claim under § 1692e. (Dkt. 25, at 8). Accordingly, the only question before the court is whether Little's amended complaint adequately states a claim for violation of § 1692d(5).[1]

> To avoid dismissal, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Plausibility" refers to the scope of the complaint; it cannot be so general as to encompass a wide swath of innocent conduct. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008). In assessing a motion to dismiss for failure to state a claim, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Smith* [*v. United States*], 561 F.3d [1090,] 1098 [(10th Cir. 2009)]. Conclusory statements, threadbare recitals of elements, and legal conclusions, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint must provide more than "naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

---

[1] The court notes that the proposed amended complaint joins a claim under Section 1692d(5) with a claim under "15 U.S.C. § 1692d preface." Thus, she asserts in her Response to the PRA's Renewed Motion to Dismiss that she has raised a claim "under §§ 1692d and 1692d(5) by alleging that defendant placed telephone calls to her and engaged her in conversation multiple times a day after advised she could not pay." (Dkt. 25, at 7). The count dismisses any separate claim under § 1692d, since the only alleged harassment takes the form of telephone calls. Courts have recognized that to permit a separate action under § 1692d under such circumstances would "effectively eviscerate [§ 1695d(5)'s] intent requirement [and] render that entire section superfluous." *Stirling v. Genpact Services*, No. 11–06369, 2012 WL 952310 at *3 (C.D.Cal. 2012). *See also Neu v. Genpact Services*, No. 11-2246, 2013 177382, *3 (S.D. Cal. 2013); *Hendricks v. CBE Group*, 891 F.Supp.2d 892, 896 n. 2 (N.D. Ill. 2012). The court notes that Little makes no attempt to respond to PRA's argument (Dkt. 24, at 8) premised on *Stirling* and *Neu*.

*Little*, 2013 WL 6153579, at *1.

Except for changes to Paragraphs 32 and 33, the modifications in the Amended Complaint are not substantial, and do not address Little's § 1692d(5) claim. That is, she references that the debt was incurred with a particular credit card (¶ 17), and specifies that PRA attempted to communicate with her by telephone and mail "including but not limited to February, March and April 2012" (¶ 25). Otherwise the Amended Complaint adds allegations which relate solely to the claims under § 1692e or § 1692e(2), which she has abandoned.

With respect to the § 1692d(5) claim, Little alleges:

32. During the telephone calls representatives, employees and/or agents of the Defendant caused Plaintiff's telephone continuously to ring, **multiple times per day**, with the intent to annoy, abuse and harass Plaintiff in violation of 15 U.S.C. § 1692d preface and d(5), **in that they continued to call after advised Plaintiff could not pay**.

33. During the telephone calls representatives, employees and/or agents of the Defendant repeatedly engaged Plaintiff in conversation, **multiple times per day**, with the intent to annoy, abuse and harass Plaintiff in violation of 15 U.S.C. § 1692d preface and d(5), **after advised Plaintiff could not pay**.

(Dkt. 10-1). The language in bold was added by Little in her Amended Complaint.

PRA argues that the Amended Complaint remains impermissibly vague. It notes the many cases holding that frequent calls, by themselves, do not establish an intent to harass. In determining whether a collection service has violated § 1692d(5),

> the Court considers the volume and pattern of the calls by the debt collector to the plaintiff. A high volume of calls, even daily calls, unaccompanied by other egregious conduct is insufficient to raise a triable issue of fact for the jury.

*Webb v. Premiere Credit*, No. 12-2001, 2012 WL 5199754, *3 (D. Kan. Oct. 22, 2012) (footnotes omitted). As PRA notes, *Webb* is consistent with other decisions interpreting § 1692d(5). *See Miller v. Prompt Recovery Servs.*, No 11-2292, 2013 WL 3200659 (N.D. Ohio June 24, 2013); *Conover v. BYL Collection Servs.*, No. 11-6244, 2012 WL 4363740 (W.D.N.Y. Sept 21, 2012); *Carman v. CBE Group*, 782 F.Supp.2d 1223, 1232 (D. Kan. 2011).[2]

---

[2] *Miller* contains an extensive description of cases determining that a frequency of up to four daily calls by itself will usually not indicate an intent to harass. The court noted that in the case before it

> it is clear that the volume of the calls—32 or 33 over a four month period, and the frequency of the calls—"including multiple times per day"—alone, do not create an issue of fact. Courts have found a much higher volume of calls, alone, insufficient to defeat summary judgment. *See, e.g., Wait v. Fin. Recovery Servs., Inc.*, No. 8:09–cv–02336, 2010 WL 5209350 (M.D.Fla. Dec.16, 2010) (granting summary judgment, notwithstanding evidence that debt collector made 132 calls in a nine month period, often calling four times per day); *Carmen v. CBE Group, Inc.*, 782 F.Supp.2d 1223 (D.Kan.2011) (granting summary judgment although debt collector called 139 times during two months); *Pugliese* [*v. Professional Recover Service*, No. 09-12262], 2010 WL 2632562 [(E.D. Mich. 2010)] (finding evidence that the debt collector called 350 times during eight months insufficient, as a matter of law, to establish harassment under the FDCPA). Courts have also found that even "daily" calls, unaccompanied by other egregious conduct, do not establish harassment. *See Arteaga* [*v. Assent Acceptance*,] 733 F.Supp.2d [1281,] 1229 [(E.D. Cal. 2010)] (allegations of "daily" or "near daily" phone calls alone do not raise an issue of fact as to harassment); *see, e.g., Saltzman v. I.C. Sys., Inc.*, No. 09–10096, 2009 WL 3190359, at *7 (E.D.Mich. Sept.30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages.") (quoting *Akalwadi v. Risk Mgmt.Alternatives, Inc.*, 336 F.Supp.2d 492, 505 (D.Md.2004)).

2013 WL 3200659, at *5 (docket reference and footnote omitted).

4

However, a "high volume of calls, even daily calls" is one thing, multiple calls in the same day is another. As *Webb* itself recognized, "Other egregious conduct may include calling after immediately hanging up, calling multiple times in a single day, calling places of employment, calling family or friends, calling at odd hours, or calling after being asked to stop." 2012 WL 5199754 at *3. *See also Conover*, 2012 WL 4363740 at *6 ("numerous calls on the same day or multiple calls during a short period of time may constitute harassment").

In the present case, the Amended Complaint alleges that PRA called "multiple times per day," and that calls continued even after she told PRA that she could not pay the debt.

PRA agrees that continuing to call after the debtor asks for such calls to stop may evidence an intent to harass, and distinguishes one of the cases cited by plaintiff on this basis. *See Brandt v. I.C. System*, 2010 WL 582051 (M.D. Fla. Feb. 19, 2010) ("[o]nce Plaintiff allegedly told Defendant to stop calling him, that he had already paid the alleged debt, and that their calls were bothering him, each of the 101 subsequent phone calls to Plaintiff constituted a violation of 15 U.S.C. § 1692d"). Here, PRA stresses, the Amended Complaint does not allege that Little asked PRA to stop calling, only that she could not pay the debt.

PRA contends that the other case primarily relied upon by Little, *Prewitt v. Wopoff & Abramson*, 2007 WL 841778 (W.D.N.Y. March 19, 2007) is also distinguishable, because in that case there was evidence that the defendant called "as often as four times per day, every day, for a six-month period." However, PRA fails to note that *Prewitt* stands directly

5

contrary to its distinction between a request to stop calling and a statement that the debtor cannot pay. After noting the general volume of calls, *Prewitt* continued:

> Plaintiff alleges that Defendant called his residence as often as four times per day, every day, for a six-month period, and continued to call after Plaintiff indicated that he could not pay the debt. Although Plaintiff did not explicitly demand that Defendant cease calling him, he did indicate to Defendant that he was unable to pay the debt. The frequency of calls following this conversation could demonstrate to a jury that Defendant acted with "[an] intent to annoy, abuse, or harass" Plaintiff in violation of 15 U.S.C. § 1692d(5).

2007 WL 841778 at *3.

PRA cites two cases in support of its don't call/can't pay distinction, *Durthaler v. Accounts Receivable Mgt.*, 854 F.Supp.2d 485, 489-92 (S.D. Ohio 2012) and *Hinderliter v. Diversified Consultants Inc.*, No. 10-1314, 2012 WL 3888148 (N.D.N.Y. Sept. 7, 2012). In *Durthaler*, the court first noted the Plaintiff's allegation that "on one occasion he told the Defendant's representative to stop calling and that he could not pay the debt." *Id.* at 490. The court found that the call transcript did not support the claim that the defendant stop calling, rather he asked the defendant "to stop calling his roommate." *Id.* The court refused to infer an intent to harass based upon the single statement that the plaintiff could not pay the debt under the circumstances of the case:

> In the instant action, not only were the calls not made continuously or repeatedly, there are also no circumstances indicating the nature or context of the calls were harassing. Indeed, the transcript of the telephone calls attached to the Plaintiff's complaint shows that the Defendant's representative, identified only as Wayne, was very respectful and polite to the Plaintiff even though the Plaintiff was clearly upset with the representative. There is no evidence that the calls were made at an inconvenient time or place, that they were made after the Plaintiff repeatedly requested that they stop, or that they were made after the Plaintiff informed

6

> the Defendant that he was represented by counsel or a debt management company.

*Id*. at 491-92.

In *Hinderliter*, the court granted summary judgment where the defendant placed additional calls after the defendant offered to settle the debt for single payment of $285, and the plaintiff responded "I don't have it today." The plaintiff's response was clearly equivocal, however. The conversation continued, with the plaintiff telling the caller that he would received additional funds the next month, and he could "probably break it into two payments." This equivocal statement was coupled with other evidence indicating a lack of intent to harass.

> Regarding the volume and pattern of the calls, it is undisputed that Losco spoke with plaintiffs only once, on August 23, 2010. After Alice Hinderliter hung up, Losco did not call again until 1:25 p.m. the following day. Thereafter, she telephoned plaintiffs four more times in August; seventeen times in September; and fifteen times in October. The earliest call was 8:20 a.m.; the latest was 7:51 p.m. On all but three occasions, Losco placed only one call in a day. She never placed more than two calls in a day. On the three days when Losco placed two calls, she made the second call at least an hour and a half after the first. Plaintiffs never answered any of the calls. It appears that Losco left a message on the answering machine each time. Plaintiffs do not complain of the content of the messages left on the answering machine. Nor do plaintiffs cite to any improper conduct on the part of Losco such as calling numerous times in a day, calling back immediately after Alice Hinderliter hung up, leaving threatening messages, telephoning a third party, disguising the nature or origin of the calls, or calling at odd or inconvenient times.

2012 WL 3888148 at *4.

The court finds that *Durthaler* is distinguishable in that the single statement the debtor could not pay was explicitly linked to a determination that the calls were not made

"repeatedly." Here, Little's complaint makes precisely this allegation. *Hinderliter* is distinguishable because the plaintiff's statement that he could not pay was clearly equivocal, and it was coupled with evidence showing the frequency of the calls.

Further, the court notes that all of the cited cases involve resolution of summary judgment motions, rather than a motion to dismiss resting on *Twombly* and *Iqbal.* Prior to granting summary judgment, the court in *Webb v. Premiere Credit* denied the defendant's Rule 12(b) motion to dismiss. In doing so, the court rejected the argument "that Plaintiffs' allegations lack 'crucial' information about the dates and times of the alleged phone calls." *Webb v. Premiere Credit*, 2012 WL 2359434, *3 (D. Kan. June 20, 2012). The court found that the defendant called "continuously" and "on multiple occasions six times per day on continuous days," and that this was sufficient to withstand the motion to dismiss. The court observed that "to the extent preparation of a defense requires more information about the 'days or dates,' the 'time period,' and the 'time of day' of the alleged phone calls, Defendant can determine those details through discovery." *Id.* (footnote omitted).

Here, the Amended Complaint does not give any maximum number of calls in a given day, stating only that PRA called "multiple times per day." However, unlike *Webb v. Premiere Credit*, Little alleges that "they continued to call after advised Plaintiff could not pay." Given requirement to grant all inferences in favor of the plaintiff, the court construes this statement that Little could not pay as unequivocal. While Paragraph 32 is ambiguous as to frequency of telephone calls after Little stated she could not pay, Paragraph 33 alleges

8

that PRA agents continued to engage her in conversation "multiple times per day ... after" she stated she could not pay.

A complaint need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 545. It is sufficient if the claim for relief is plausible, and the court accordingly denies the Renewed Motion to Dismiss. *See also Stuart v. AR Resources*, 2011 WL 904167, *3 (E.D. Pa. 2011) (allegation of repeated calls and that defendants "'would continue calling her, despite her request to stop calling,'" was sufficient to satisfy *Iqbal* and *Twombly*); *Shand-Pistilli v. Professional Account Services*, 2010 WL 2978029, *5 (E.D. Pa. 2010) (rejecting *Twombly* motion, noting allegations of "continuous calls" and that plaintiff "asked defendant to stop contacting her but defendant refused to do so," and finding "[t]he law is clear that under such circumstances I may infer that the calls were made with the intent to harass or annoy").

IT IS ACCORDINGLY ORDERED this 10th day of April, 2014, that the defendant's Renewed Motion to Dismiss (Dkt. 23) is hereby granted in part and denied in part.

      s/ J. Thomas Marten
      J. THOMAS MARTEN, JUDGE